**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.M.-1, R.M.-2, W.M.-1, S.M., C.M., M.M.-1, M.M.-2, E.M. and J.M.**

**No. 18-1107** (Lewis County 17-JA-1, 17-JA-2, 17-JA-3, 17-JA-4, 17-JA-5, 17-JA-6, 17-JA-7, 17-JA-8, and 17-JA-32)

# MEMORANDUM DECISION

Petitioner Father W.M.-2, by counsel Dennis J. Willett, appeals the Circuit Court of Lewis County's October 2, 2018, order terminating his parental rights to R.M.-1, R.M.-2, W.M.-1, S.M., C.M., M.M.-1, M.M.-2, E.M., and J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Hunter D. Simmons, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 7, 2017, the DHHR filed an abuse and neglect petition against petitioner and the children's mother alleging that petitioner struck W.M.-1, causing bruising and welts to the child's face, arms, and torso. The DHHR also alleged that the family had a history of unstable housing. After multiple continuances, the circuit court held an adjudicatory hearing in June of 2017, during which petitioner stipulated to the allegations of abuse and neglect. Specifically,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because several of the children share the same initials they will be referred to as R.M.-1, R.M.-2, M.M.-1, and M.M.-2, respectively, throughout this memorandum decision. Because one of the children and petitioner share the same initials, they will be referred to as W.M.-1 and W.M.-2, respectively, throughout this memorandum decision.

1

petitioner stipulated that he "utilized excessive and inappropriate corporal punishment" upon W.M.-1 and that "such inappropriate and excessive corporal punishment caused injury to [W.M.-1]." Following the adjudicatory hearing, the parents were provided with adult life skills services to assist them with budgeting concerns. They also received food vouchers, and received case management and adult life skills through another service provider to assist with paying bills and obtaining employment. In December of 2017, petitioner's ninth child, J.M. was born; however, the parents failed to notify the DHHR of his birth. The DHHR subsequently filed an amended abuse and neglect petition regarding J.M., and petitioner later stipulated to abusing that child.

During a dispositional hearing held in March of 2018, the DHHR requested termination of petitioner's parental rights. However, the circuit court rebuked the DHHR for their failure to timely and adequately provide services to the parents, as ordered by the court in November of 2017, and found that petitioner had demonstrated that he was likely to participate in an improvement period. Petitioner was granted a three-month post-adjudicatory improvement period.[2]

In May of 2018, the parents were advised by correspondence from their landlord that, due to their failure to pay rent, they were required to vacate the residence by June 25, 2018. Also in May of 2018, petitioner's three-month-post-adjudicatory improvement period commenced. The DHHR was ordered to continue to provide services to petitioner and create a plan to transition the children back to the parents. During the May of 2018 review hearing, the circuit court found that the "case is being properly managed" by the DHHR and that the DHHR was "making reasonable efforts to achieve permanency for the minor children."[3]

In June of 2018, the circuit court held a review hearing during which evidence was presented that the parents were being evicted from their home due to their failure to pay rent. Due to the mother's proffer that she had arranged to stay in the home, the transition plan was ordered to continue as previously ordered. Additionally, the circuit court ordered that the parents "report any changes in housing, first to their respective counsel and secondly to the [DHHR]." The circuit court found that the sign language classes arranged by the DHHR were appropriate and that the DHHR was not required to look for another course.

Petitioner was evicted from his home in July of 2018. On July 6, 2018, the DHHR filed a motion to suspend the transition of the children to petitioner due to his failure to maintain appropriate housing, as he was living with his brother in a home that could not accommodate the nine children. The DHHR and the guardian also filed a motion to terminate petitioner's improvement period as well as his parental rights. According to this motion, the parents previously requested individualized therapy and family therapy, and the DHHR scheduled the intake for June 22, 2018. The parents attended but "refused to make a second appointment for family therapy at the end of the first session" and stated that they would call to schedule the next session. However, according to the DHHR, as of July 12, 2018, the parents had not scheduled any other sessions.

[2]The DHHR was ordered to provide individual and family counseling, as well as sign language classes because petitioner is deaf and some of the children have hearing impairments.

[3]Petitioner filed a motion for contempt on May 17, 2018, arguing that the DHHR was not timely providing services. Ultimately, the circuit court found no merit in petitioner's argument at a status hearing held on June 8, 2018, and denied the motion.

Subsequently, the circuit court heard evidence regarding petitioner's eviction and granted the DHHR's motion to suspend the transition of the children to petitioner.

The circuit court held multiple dispositional hearings in July of 2018 and August of 2018. A therapist testified that she had concerns with the safety of some of the children when they were running in the parking lot immediately following a therapy session and that petitioner did not schedule a second therapy session for several weeks. The therapist also testified that she requested information about the family from the DHHR, but was never provided the information requested. Another therapist testified that she did not have safety concerns for the children, and the circuit court later found that there was no safety risk for the children after the therapy sessions. A service provider testified that, during supervised visitation, the parents allowed the children to leave the designated visitation area and the service provider had to bring the children back to the area. The service provider further testified that the parents were inconsistent in disciplining the children.

The parents testified that petitioner collected $750 per month in disability and that the mother was employed and made $9.75 per hour. The DHHR presented evidence that the parents received a $4,000 tax refund, but failed to use that money to pay their rent. Petitioner's landlord testified that the parents failed to pay their rent at least nine out of the seventeen months that the abuse and neglect proceedings were pending. According to the landlord, the parents owed at least $2,000 in overdue rent. The circuit court subsequently found that based upon their dishonesty regarding their eviction, the DHHR was unaware that the parents needed assistance with their rent. The circuit court noted that the parents had "funds available that could have been used to pay their rent but failed to appropriately utilize that income" and that "it is unclear to this [c]ourt what [the parents] are spending their money on."

The circuit court found that the parents were "repeatedly and intentionally dishonest with the [c]ourt and . . . provided false information to the [c]ourt and the MDT," and that the parents were "repeatedly and intentionally dishonest with [service providers] and that said dishonesty . . . resulted in making therapy services ineffective." The circuit court further found that the parents failed to successfully complete their post-adjudicatory improvement periods and failed to maintain suitable housing for the nine children. The circuit court noted that the parents failed to take responsibility for the injuries to W.M.-1, and that it was "utterly astonished" that nearly a year after admitting to abusing the child at the adjudicatory hearing, the parents were "being untruthful about how their child W.M.[-1] was injured." The circuit court found that this failure to acknowledge their actions prevented them from "making actual improvement in the conditions that led to the filing of the abuse and neglect [p]etitions." The circuit court also noted that petitioner testified inconsistently on several occasions regarding the incident, claiming that it was an accident or caused by another child. The circuit court denied petitioner's motion for an extension of his post-adjudicatory improvement period. Furthermore, the circuit court found no reasonable likelihood that the parents could substantially correct the conditions of abuse and neglect in the near future and that the termination of their parental rights was in the children's best interests.

Ultimately, the circuit court terminated petitioner's parental rights in its October 2, 2018, dispositional order.[4] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. In support, petitioner first argues that the DHHR was antagonistic towards him, failed to comply with court orders to provide services, provided inconsistent testimony against him, and "had no intention of ever reunifying this family." He also asserts that the DHHR failed to timely schedule family therapy and sign language classes. However, these assertions have no merit and we do not find petitioner's arguments persuasive.

Pursuant to West Virginia Code § 49-4-610(4)(A), parents "shall be responsible for the initiation and completion of all terms of the improvement period." According to the record, following his stipulated adjudication in June of 2017, petitioner was provided with adult life skills services, budgeting services, and food vouchers. It is unclear from the record to what extent petitioner participated in those services. However, petitioner was later granted a post-adjudicatory improvement period in May of 2018 and the DHHR was ordered to arrange family therapy services. According to the record, the DHHR scheduled the intake for therapy in June of 2018, and the parents subsequently attended therapy sessions. While petitioner argues that the DHHR "drug its heels" in providing services, the record shows that petitioner failed to schedule additional sessions until a subsequent MDT meeting. Petitioner was "responsible for the initiation and

---

[4]The mother's parental rights were also terminated. According to respondents, the permanency plan for seven of the children is adoption into their respective foster placements. The DHHR is currently seeking adoptive placements for two of the older children and the permanency plan will be adoption once those placements are selected.

completion" of the sign language and family therapy services.[5] *Id*. Moreover, in May of 2018, the circuit court specifically found that the DHHR was making "reasonable efforts" to reunify the family as required by West Virginia Code § 49-4-604(b)(7). Therefore, because the DHHR provided services as ordered by the circuit court and because petitioner was responsible for the initiation and completion of those services, we find no merit to petitioner's argument that the DHHR attempted to prevent the reunification of this family.

Petitioner also cites to portions of the record wherein the circuit court rebuked the DHHR for not providing services as ordered, found that petitioner had "generally done everything asked" of him by the DHHR, and found that petitioner had not been afforded an ability to remedy the conditions of abuse in support of his argument that the DHHR lacked good faith in providing services. While this Court does find evidence of these circumstances in the record, petitioner fails to recognize that each of these situations was remediated. Following these findings, the circuit court granted petitioner an improvement period and ordered the DHHR to provide services. Thereafter, the circuit court found that the "case is being properly managed" by the DHHR and that the DHHR was "making reasonable efforts to achieve permanency for the minor children." Although petitioner alleges that the DHHR was antagonistic towards him, he minimizes his failure to correct the conditions of abuse and neglect during the proceedings. At the time of the dispositional hearing, petitioner was unable to provide a home for his nine children and failed to acknowledge the abuse that led to filing the abuse and neglect petition.

Petitioner next contends that the DHHR "refused to provide housing assistance" when the DHHR was aware the parents were unable to afford a home large enough for nine children. However, the record shows that in March of 2018, the mother testified that her bills and rent were "paid and caught up" and petitioner did not refute this testimony. In fact, the record shows that he failed to inform the DHHR that he was in need of financial assistance to avoid eviction. Petitioner's landlord testified that the parents failed to pay their rent at least nine out of the seventeen months that the abuse and neglect proceedings were pending and owed over $2,000 in overdue rent. The circuit court found that due to petitioner's dishonesty regarding the eviction, the DHHR was unaware that they needed financial assistance. Thus, petitioner's argument that the DHHR failed to provide financial assistance is without merit.

Finally, we find no error in the circuit court's termination of petitioner's parental rights. During the dispositional hearing, the circuit court found that, despite his admissions at the adjudicatory hearing regarding W.M.-1's injuries, petitioner's explanations regarding how W.M.-1 was injured were subsequently inconsistent throughout the proceedings.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no

---

[5]To the extent petitioner argues that the DHHR took too long to arrange sign language classes, we note that the DHHR worker testified as to the steps she took to find someone qualified to teach the class and the circuit court ultimately found that the DHHR was properly handling the case.

reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[ren].

We have also held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Here, petitioner failed to take responsibility for the abuse he perpetrated against W.M.-1. The circuit court noted that petitioner's failure to take responsibility for the injuries to W.M.-1 prevented him from "making actual improvement in the conditions that led to the filing of the abuse and neglect [p]etitions." The circuit court also expressed astonishment that the parents were "being untruthful about how their child W.M.[-1] was injured" nearly a year since admitting to injuring the child at the adjudicatory hearing. Because petitioner failed to acknowledge the conditions of abuse and neglect, those problems could not be remedied.

Additionally, petitioner repeatedly failed to advise the DHHR, the circuit court, and the service providers of his failure to pay rent, resulting in an eviction. Petitioner remained without suitable housing as of the final dispositional hearing. Indeed, the transition plan to return the children to the parents was suspended, in part, based upon petitioner's eviction and, as of the dispositional hearing, the children had been in foster care for approximately seventeen months.[6] As such, based upon petitioner's failure to acknowledge the conditions of abuse and neglect, and his failure to remedy the issue of housing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

---

[6]West Virginia Code § 49-4-605(a)(1) provides that the DHHR shall file a motion to terminate parental rights "[i]f a child has been in foster care for fifteen of the most recent twenty-two months."

6

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 2, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7